# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

      Plaintiff,           :         Case No. 1:08-cr-005
                                                     Also Case No. 1:10-cv-448

                                                     Chief Judge Susan J. Dlott
     -vs-                                        Magistrate Judge Michael R. Merz
                                            :

BRIAN LEWIS,

      Defendant.

---

### SUPPLEMENTAL REPORT AND RECOMMENDATIONS

---

This case is before the Court on Defendant's Objections (Doc. No. 29) to the Magistrate Judge's Report and Recommendations (Doc. No. 28). The General Order of Reference for the Dayton location of court permits a magistrate judge to reconsider decisions or reports and recommendations when objections are filed.[1]

Defendant is serving a sentence of 120 months on conviction of trafficking more than five grams of crack and using a firearm in furtherance of that offense. His conviction became final November 4, 2008, but he did not file his § 2255 Motion until July 7, 2010. He claims an exception under § 2255(f)(4) to the one-year statute of limitations because he says he learned the critical facts about the crack-powder sentencing disparity during 2010 testimony. The Report found this claim implausible and recommended dismissal of the Motion as time-barred.

---

[1] Defendant begins his Objections with the gratuitous comment "Needless to say, the Magistrate's report does not sympathize with the tens of thousands of African-Americans sentenced under the 1986 Anti-Drug Abuse Act. . ." Nor does it express sympathy with the tens of thousands of African-Americans whose lives have been ruined by addiction to cocaine sold by those serving those sentences.

1

In his Objections, Petitioner relies on passage of the Fair Sentencing Act of 2010, signed into law by President Obama on August 3, 2010. Defendant acknowledges that Congress did not make the Act retroactive, but urges this Court to do so, arguing that the Act recognizes a new right which should apply to anyone sentenced under the "old" mandatory minimum. He cites *Dodd v. United States*, 545 U.S. 353 (2005). In that case the Supreme Court held that the one-year limitation period in § 2255(f)(3) runs from date on which Supreme Court recognizes a new right rather than the date on which the Supreme Court holds that right to apply retroactively. *Dodd* does not assist Defendant because the new right (to be sentenced for crack trafficking on an 18-1 ratio with powder cocaine) (1)is not a constitutional right, and (2) was created by Congress rather than recognized by the Supreme Court.

Defendant states he is "not unmindful of the distinction between a law passed by Congress and a New Rule decided by the Supreme Court." (Objection, Doc. No. 29, PageID 76). But he then argues that the right in issue here was "created by the evidence of 'wrong information' given, which was responsible for sentencing African-Americans disproportionately in federal courts in violation of the Constitution and Laws of the United States." *Id.*. It makes no sense to argue that the 100-1 ratio violates the "Laws" of United States if "Laws" means either statutes or case law: no such statute exists and the Court is unaware of any such case law.

The argument that the 100-1 ratio is unconstitutional because based on wrong information given to Congress in 1986 (when the 100-1 ratio was adopted) makes sense but is not persuasive. This Court or the Supreme Court could accept that argument and the logical implication would be that the sentencing ratio has been unconstitutional all along. That is because when the courts accept a new argument about the meaning of the Constitution, they do not think of themselves as "creating" a new right, but recognizing one which has been implicit in the Constitution.

However, even if this Court were to adopt Defendant's argument that the 100-1 ratio has

been unconstitutional "all along" because based on wrong information, that would not assist Defendant's statute of limitations claim because that argument was available to Defendant when he pled guilty and throughout the time when he could have timely filed a § 2255 motion.

Defendant's second argument – that the time did not run because he did not learn that the 100-1 ratio was based on wrong information until 2010 – is factually implausible, given the amount of discussion the ratio has generated. Besides being factually implausible, the argument would essentially void the statute of limitations because a defendant could always claim ignorance of critical facts until within the year before he filed and the claim would be very difficult to disprove. The Court should, therefore, dismiss the Motion as untimely.

The Motion also is without merit. In his second objection, Defendant asserts that the relief he seeks is within the contemplation of § 2255 because the 100-1 ratio could be considered an equal protection violation or the Court could apply the Fair Sentencing Act retroactively.

As part of his equal protection argument, Defendant claims the 100-1 ratio "unquestionably" employs a suspect class. (Objection, Doc. No. 29, PageID 78). Defendant does not say what that class is, but presumably the class he claims is suspect is "those who sell crack cocaine" as opposed to those who sell powder cocaine The class is not suspect on its face. If Defendant is arguing that singling out the class of crack dealers from other cocaine dealers was a way of targeting African-American cocaine dealers, he has not met his burden of proof on that argument. While the Court is aware of arguments, reflected in testimony before the current Congress, that the 100-1 ratio had a disparate impact on African-American cocaine dealers, particularly at the "street" level, the Court is not aware of persuasive evidence – and certainly none is cited by Defendant – that Congress intended in 1986 to target African-American cocaine dealers with the 100-1 ratio.[2] Compare *Yick*

---

[2] Certainly there has been much public conversation about the differential impact of "crack" on poor **users** of cocaine, but that would be evidence supporting rather than undermining the more severe punishment.

*Wo v. Hopkins*, 118 U.S. 356 (1886). It appears that the current Congress agrees that Congress in 1986 when adopting the 100-1 ratio made a mistake on the facts. But legislatures are constitutionally entitled to make such mistakes. See *Lochner v. New York,* 198 U.S. 45, 25 S. Ct. 539, 49 L. Ed. 937 (1905)(Holmes, J., dissenting).

Defendant also argues that this Court on its own authority could apply the Fair Sentencing Act retroactively. Retroactivity is not favored in the law and congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result. *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 208 (1988). Defendant does not argue that any language in the Fair Sentencing Act requires its retroactive application to cases which became final before its enactment[3]. Given the public debate on this question, it seems unlikely Congress did not advert to it as it affects probably thousands of persons now incarcerated. Since Congress did not indicate the Act should be applied retroactively, this Court should not act beyond the Congressional intent. See also *Landgraf v. USI Film Products*, 511 U.S. 244 (1994).

It is therefore again respectfully recommended that the Motion be denied with prejudice.

August 18, 2010.

                                              s/ **Michael R. Merz**
                                              United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and

---

[3] Application of the Act to cases which arose before its adoption but were not yet final on August 3, 2010, is obviously a different question.

Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).